UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CALVIN NOBLE and NELLIE NOBLE,      :
                                    :
        Plaintiffs,                 :
                                    :
        v.                          :   Case No. 2:10-cv-35
                                    :
JOHN BOPPEL, MICHAEL KEHLER,        :
and ERNEST GASKIN,                  :
                                    :
        Defendants.                 :
                                    :

**MEMORANDUM and ORDER**

Plaintiffs Calvin Noble and Nellie Noble brought this diversity action against Defendants John Boppel, Michael Kehler and Ernest Gaskin for injuries suffered when Boppel shot Calvin Noble during a hunting trip in Granby, Vermont.  The Nobles's original complaint asserted a negligence claim against Boppel, a negligence claim against Gaskin, and joint venture and joint enterprise claims against all three defendants.  Compl., ECF No. 1.  The Nobles subsequently dismissed Boppel from the suit.  On April 5, 2010, Defendant Gaskin moved to dismiss the claims against him pursuant to Fed. R. Civ. P. 12(b)(6).  On June 29, 2010, the Court granted Gaskin's motion with regard to the joint enterprise and joint venture claims against him, but denied the motion with regard to the negligence claim.  Currently pending before the Court are the Nobles's motion to amend their complaint, ECF No. 22; Kehler and Gaskin's joint motion for summary judgment, ECF No. 26; the Nobles's motion to continue

consideration of the summary judgment motion, ECF No. 32;
Gaskin's motion to strike an affidavit submitted by the Nobles as
supplemental authority for their opposition to the summary
judgment motion, ECF No. 42; and the Nobles's motion to permit
them to file an opposition to the motion to strike.  ECF No. 44.
For the reasons stated below, the motion to amend is **granted**; the
motion to strike is **denied**; the motion to file an opposition to
the motion strike is **granted**; the motion to continue
consideration is **denied as moot**; and the motion for summary
judgment is **granted** with respect to the joint enterprise and
joint venture claims against Gaskin, but **denied** with respect to
the negligence claim against Gaskin and the joint enterprise and
joint venture claims against Kehler.

### Factual Background

The facts set forth below are undisputed, except where
otherwise noted.

Gaskin owns a hunting camp in Granby, Vermont.  In October
2008, Kehler and Boppel, both residents of Pennsylvania, visited
Gaskin's camp to hunt moose.  While the Nobles allege that Gaskin
operated a commercial hunting guide service from his camp, and
that Kehler and Boppel paid Gaskin to provide lodging, meals, and
guide services, Pls.' Statement of Undisputed Facts ¶¶1, 7, 8,
ECF No. 32-2, Gaskin denies that he contracted to provide guide
services to Kehler and Boppel and represents that the hunters

2

were expected but not required to contribute for lodging and meals.  Gaskin Answer ¶17, ECF No. 17.  According to the affidavit of a private investigator who interviewed Boppel, Kehler and Boppel paid Gaskin a $1,500 fee, with each of the two hunters contributing half of the money.  Yendell Aff. ¶3, ECF No. 32-3.

In preparation for the hunting trip, Kehler obtained from the Vermont Fish and Wildlife Board a valid moose hunting permit and designated Boppel as his subpermittee pursuant to Vt. Stat. Ann. tit. 10 app. § 33.  Compl. ¶¶ 10-11; Pls.' Statement of Undisputed Facts ¶3.  Kehler and Boppel also had Vermont hunting licenses for big game, including bear.  Defs.' Statement of Undisputed Facts ¶4.

It is undisputed that on October 18, 19, 20, and 21, both Kehler and Boppel unsuccessfully hunted for moose.  The Nobles allege that, on these days, "Gaskin picked out tree stands in likely areas to find moose and was always in the woods with either Kehler or Boppel."  Pls.' Statement of Undisputed Facts ¶10.  Kehler's affidavit confirms that Gaskin did accompany him and Boppel into the woods and "helped [them] hunt moose[]" on those dates.  Kehler Aff. ¶4, ECF No. 26-3.  The Defendants allege that, on October 22, Kehler decided not to go out hunting because his feet hurt and that Boppel, who as the subpermittee was not allowed to hunt moose without Kehler being present,

informed Kehler and Gaskin that he was going out to hunt bear on his own.  Defs.' Statement of Undisputed Facts ¶¶5-7; Kehler Aff. ¶5; Gaskin Aff. ¶4-5, ECF No. 26-2.  It is undisputed that Boppel shot Calvin Noble on that day.  The Defendants allege that Boppel accidentally shot Noble because he mistook him for a bear. Defs.' Statement of Undisputed Facts ¶8.

The Nobles allege that, on October 21, Calvin Noble informed Gaskin of two locations where he and his son planned on hunting for moose on October 22.  Pls.' Statement of Undisputed Facts ¶¶15-16.  According to Calvin Noble's affidavit he did this because, before moose-hunting season had started, he and Gaskin had "agreed [to] check in with each other during the hunt to let each other know what [they] had seen and what each other's plans were going to be so that [they] wouldn't interfere with each other."  Noble Aff. ¶6, ECF No. 32-4.  The location where the shooting occurred on October 22 was one of the two locations where Calvin Noble told Gaskin he planned on hunting that day. Pls.' Statement of Undisputed Facts ¶¶17-21.  The Nobles have also presented evidence calling into question the Defendants's assertion that Boppel was hunting bear on his own on October 22. Specifically, they have attached to their briefing a transcript of an interview with Gary Willson, a neighbor of Gaskin's who was present at Gaskin's hunting camp shortly after the shooting and asserts that he overheard Gaskin telling Kehler that he and

Boppel should stick to a fabricated story that they were hunting bear, and not moose, on the day of the shooting.  Willson Interview 17-19, ECF No. 31-5; Pls.' Statement of Undisputed Facts ¶32.  Willson also indicated that, at this time, he observed that Kehler was in camouflage hunting clothing and appeared to be sweating as if he had recently exerted himself. Pls.' Statement of Undisputed Facts ¶31.  In further support of their assertion that Boppel was hunting moose on the day of the shooting, the Nobles also allege that Boppel shot Calvin Noble immediately after Noble sounded a moose call.  Pls.' Statement of Undisputed Facts ¶21.

## Discussion

### I. Motion to Amend Complaint

On July 9, 2010, the Nobles filed a notice that they were amending their complaint with regard to their claims against Gaskin and also moved to amend their complaint with regard to their claims against Kehler.  The amended complaint, ECF No. 22-1, adds several new factual allegations to the original complaint.  It reasserts the negligence claim against Gaskin and the joint venture and joint enterprise claims against Kehler, and it attempts to revive the joint venture and joint enterprise claims against Gaskin, which were dismissed on Gaskin's 12(b)(6) motion.

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), a party is entitled

to amend its complaint once as a matter of course if the amendment is filed within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  The Nobles assert that they are entitled to amend their Complaint with regard to Gaskin because Gaskin filed his answer to the Nobles's original complaint on June 21, 2010, 18 days prior to the filing of the notice to amend.  However, they ignore the fact that Gaskin filed a motion to dismiss under Rule 12(b)(6) on April 5, 2010 and that their time to amend their complaint as a matter of course expired 21 days after that date.  Accordingly, they may amend their complaint with regard to both Gaskin and Kehler "only with the opposing party's written consent or the Court's leave."  Fed. R. Civ. P. 15(a)(2).  Gaskin and Kehler both oppose the motion to amend.  *See* Joint Opposition to Mot. to Amend, ECF No. 24.

"Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).  Gaskin and Kehler argue that amendment of the complaint is futile because the amended complaint does not allege facts sufficient to sustain the joint enterprise and joint venture claims that were dismissed pursuant to Fed. R. Civ. P. 12(b)(6) in the Court's memorandum and order

of June 29, 2010.[1]  They do not assert bad faith, undue delay,
undue prejudice or any additional grounds for denying the motion
to amend.  As explained *infra* in the discussion of the summary
judgment motion, the amended complaint states viable joint
enterprise and joint venture claims against Kehler.  Furthermore,
the amendments to the complaint add factual allegations relevant
to the negligence claim.  Accordingly, amendment is not futile.
The motion to amend is **granted**.

## II. Motion to Strike Affidavit and Motion to Permit Opposition to Motion to Strike

On December 7, 2010, the Nobles filed as supplemental
authority to their opposition to the Defendants's summary
judgment motion the affidavit of Wayne Derby, a registered
hunting and fishing guide in New Hampshire.  Derby Aff., ECF No.
38-1.  In the affidavit, Derby opines on matters relevant to the
standard of care for professional hunting guides, whether
Gaskin's conduct met that standard of care, and whether Gaskin's
conduct was a proximate cause of the shooting.  The Defendants
have moved to strike the affidavit on the grounds that the
Plaintiffs have presented "no legal argument as to how the
affidavit supplements their opposition" to the summary judgment

---

[1] While the Defendants appear to be under the mistaken
impression that the Court dismissed the joint venture and joint
enterprise claims against both defendants, the Court's June 29
order only dismissed the joint venture and joint enterprise
claims against Gaskin.  Kehler did not join Gaskin's 12(b)(6)
motion and has not filed his own motion to dismiss.

motion, that it states legal conclusions that stray beyond the scope of admissible expert testimony, and that it is untimely. Mot. to Strike 5, ECF No. 42.  The Nobles have filed an opposition to the motion to strike, along with a motion for permission to file this opposition.  Mot. to Permit Opp'n, ECF No. 44.

While it is true that the Plaintiffs, in filing the affidavit, neglected to explicitly spell out how the affidavit is intended to supplement their opposition to the summary judgment motion, this point is readily apparent.  The Plaintiffs's negligence claim against Gaskin sounds in professional negligence.  As the Plaintiffs themselves concede, in order to prevail on this claim, they are all but required to present expert testimony establishing the standard of care in the applicable profession.  Mot. for Permission to Oppose Mot. to Strike 4, ECF No. 44; *see also Clayton v. Unsworth*, 2010 VT 84, ¶17, 8 A.3d 1066 ("Because this was a professional negligence case, expert testimony was required to: establish the standard of care; show that defendants' conduct departed from that standard; and show that the conduct was the proximate cause of the [plaintiffs's] harm.  The only exception to this requirement is where the lack of care is so apparent that only common knowledge and experience are needed to comprehend it." (internal citation and quotation omitted)).

With regard to the objection that the affidavit includes inadmissible assertions of legal conclusions, the Defendants are correct that, should Derby be called as an expert witness at trial, he may not testify to an ultimate issue in the case "based on inadequately explored legal criteria." *See Andrews v. Metro North Commuter Railroad Co.*, 882 F.2d 705, 709 (2d Cir. 1989). Nevertheless, the bulk of the affidavit submitted by the Plaintiffs consists not of blunt legal conclusions, but of opinion evidence derived from Derby's experience as a professional hunting guide and based upon the underlying facts of this case.  In light of the fact that, under Vermont law, expert testimony is almost always required to sustain a professional negligence claim, consideration of the affidavit will be extremely helpful to the Court in resolving the summary judgment motion.

As to timeliness, the Defendants complain that the Plaintiffs did not file the affidavit within thirty days of when the summary judgment motion was served, as required by Local Rule 7(a)(3)(A),[2] and that they also failed to disclose Derby as an expert by the deadline set in the Stipulated Discovery Schedule/Order.  ECF No. 25.  Under that schedule, the Plaintiffs

---

[2] The Plaintiffs assert that, in moving the Court to stay consideration of the summary judgment motion while discovery was pending, they implicitly sought permission to enlarge the time in which they would be permitted to file affidavits.

were to submit expert reports by October 1, 2010 and the Defendants were to depose any experts disclosed by the Plaintiffs by December 1, 2010.  The Defendants, who note that the Derby affidavit itself does not contain all of the required elements of an expert report under Fed. R. Civ. P. 26(a)(2)(B), assert that they have been prejudiced by this tardiness because they "cannot now depose Derby as the time for doing so has passed."  Mot. to Strike 5.

Any prejudice to the Defendants can be cured by extending the discovery schedule in a manner that allows the Plaintiffs to produce an adequate expert report and affords the Defendants the opportunity to depose the expert once the report is disclosed. Accordingly the Court hereby extends the discovery schedule as follows: The Plaintiffs will have 30 days from the date this order issues to disclose their expert report; the Defendants will then have 60 days from the disclosure of the expert report to depose the disclosed expert.

In the interim, because any prejudice to the Defendants will be avoided by extending the discovery schedule, the Court will consider the Derby affidavit in deciding the summary judgment motion.  The motion to strike is **denied**.  The Nobles's motion to permit the filing of their opposition to the motion to strike is **granted**.

**III. Motion to Continue Consideration of Summary Judgment Motion**

In their September 9, 2010 opposition to the summary judgment motion, the Plaintiffs, noting that they did "not possess depositions or affidavits from many critical witnesses," moved to continue consideration of the motion "until discovery [was] closer to complete." Opp'n to Summ. J. Mot. 8. Under the Stipulated Discovery Schedule/Order in this case, discovery pertaining to the fact witnesses of both the Plaintiffs and the Defendants closed on February 1, 2011. Because discovery pertaining to fact witnesses is now complete, the motion to continue is **denied as moot**.

**IV. Motion for Summary Judgment**

Summary judgment is "'warranted upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 455 (2d Cir. 2007) (quoting *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004)); Fed. R. Civ. P. 56(c). "In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006).

*A. Negligence Claim*

The Nobles frame their negligence claim against Gaskin as

one "based on common law professional negligence."  Opp'n to
Summ. J. Mot. 3, ECF No. 32.  In order to prevail on a claim of
professional negligence, a plaintiff must establish the following
elements: (1) that the defendant owes a legal duty to conform to
a certain standard of care so as to protect the plaintiff from an
unreasonable risk of harm; (2) that the defendant committed a
breach of this duty by failing to conform to the standard of
care; (3) that the defendant's conduct was the proximate cause of
the plaintiff's injury; and (4) that the plaintiff suffered
actual loss or damage.  *See Wilkins v. Lamoille County Mental
Health Services, Inc.,* 2005 VT 121, 889 A.2d 245 (2005).  The
Nobles allege that Gaskin breached his duty of care as a
professional moose hunting guide and that this breach was the
proximate cause of the damages they suffered as a result of
Calvin Noble's shooting by Boppel.  Specifically, they allege
that after Calvin Noble told Gaskin where he would be hunting on
the day of the shooting, Gaskin failed to "adequately supervise
the hunt" and that this failure to supervise was the proximate
cause of the shooting.

The Defendants argue that Gaskin did not owe a legal duty to
the plaintiffs.  They note that, in determining whether a duty
exists, courts often look to the relationship of the parties and
the foreseeability of the harm, Summ. J. Mot. 3, ECF No. 26
(citing *Langle v. Kurkul*, 510 A.2d 1301, 1305 (Vt. 1986)), and

assert that neither factor suggests that Gaskin owed a duty to the Nobles.

With regard to the relationship between the parties, the Defendants first argue that because Boppel was hunting bear and not moose on October 22, 2010, Gaskin was not acting as a moose hunting guide at the time of the shooting and therefore was not bound by any professional duty of care.  This argument fails to take account of the fact that, on a motion for summary judgment, "in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party." *Beth Israel Med. Ctr.*, 448 F.3d at 579.  The Nobles assert that Boppel was in fact hunting moose on the day of the shooting and that Gaskin therefore had a duty to perform as a reasonable moose hunting guide on that day.  In support of this assertion, they allege that Noble was shot immediately after he sounded a moose call and that a neighbor later overheard Gaskin telling Kehler that they should fabricate a story that they were not hunting moose on that day.  The Defendants cannot prevail on their summary judgment motion merely by controverting factual allegations made by the Plaintiffs.

The Defendants next argue that, even assuming Gaskin was acting as a moose hunting guide at the time of the shooting, this relationship does not give rise to a duty of care owed by Gaskin

to the Nobles.   The Nobles recognize that "[g]enerally, there is
no duty to control the conduct of another to protect a third
party from harm," but point out that the Vermont Supreme Court
has identified exceptions to this rule where there exists a
"special relationship" among the parties.   Opp'n to Summ. J. Mot.
3 (quoting *Peck v. The Counselling Service of Addison County,
Inc.*, 499 A.2d 422, 425 (Vt. 1985)).   Drawing on the Restatement
(Second) of Torts § 315 (1965), the Vermont Supreme Court has
pointed to two types of special relationships that may give rise
to a duty "to control the conduct of a third person as to prevent
him from causing physical harm to another[:]" "(a) a special
relation [] between the actor and the third person which imposes
a duty upon the actor to control the third person's conduct, or
(b) a special relation [] between the actor and the other which
gives to the other a right to protection."   *Peck*, 499 A.2d at 425
(quoting  Restatement (Second) of Torts § 315 (1965); *see also
Smith v. Day,* 538 A.2d 157, 158 (Vt. 1987) (quoting *id*.); *Barrett
v. Prison Health Servs.*, No. 5:08-CV-203, 2010 U.S. Dist. LEXIS
72470, at *12 (D. Vt. July 19, 2010) ("Vermont follows the
Restatement (Second) of Torts § 315 [] in determining whether
there is a duty to protect a third person from harm.").

In the instant case, there are material factual disputes
that, if decided in favor of the Plaintiffs, may establish both
types of special relationships.   In the first instance, the

14

Nobles assert that Boppel was hunting moose at the time of the shooting, that Gaskin was acting as a professional moose hunting guide, and that Gaskin therefore had a duty to control Boppel's conduct with respect to the moose hunt.  The Nobles have submitted the affidavit of Wayne Derby, a professional hunting guide and potential expert witness, who opines that part of a hunting guide's duty is to "assist[], direct[], aid[] and instruct[]" hunters.  Derby Aff. ¶13.  The Derby affidavit asserts that part of this duty includes "instruct[ing] [the hunters] regarding safe hunting locations[.]" *Id.* at ¶17.

With regard to the second variety of special relationship, based upon the Plaintiffs's allegation that Calvin Noble and Gaskin "agreed [to] check in with each other during the hunt to let each other know what [they] had seen and what each other's plans were going to be so that [they] wouldn't interfere with each other," Noble Aff. ¶6, a jury could reasonably conclude that "a special relation exist[ed] between [Gaskin] and [Noble] which [gave] [Noble] a right to protection."[3]  Restatement (Second) of

---

[3] To the extent that the Defendants contend that Calvin Noble's statement that he told Gaskin where he would be hunting is inadmissible hearsay which may not "create a disputed issue of fact," Reply in Support of Summ. J. Mot. 8-9, ECF No. 33 (citing *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 87 (2d Cir. 2005), they misunderstand the purpose for which Noble's out of court statement to Gaskin is being used.  The Plaintiffs seek to use Noble's statement not to prove the truth of the matter asserted (i.e. the location where Gaskin was hunting), but for the non-hearsay purpose of showing that Gaskin had knowledge of where Gaskin would be hunting on the day of the shooting.

Torts § 315.  The Derby affidavit further supports this proposition: "[h]unting guides owe a duty to both those that hire them to conduct a hunt and to others who may be placed in harm's way as a result of hunting activity, including, but not limited to, other hunters who are known to be in the area of the hunt." Derby Aff. ¶10.

While the Defendants cite a number of cases in which courts have found there did not exist special relationships sufficient to overcome the general no-duty rule in other contexts,[4] none of these cases stands squarely for the propositions that a hunting guide does not have a duty to control the conduct of those he is guiding or that an agreement among hunters to keep each other apprised of their whereabouts during a hunt does not create a right to protection.  "[R]esolv[ing] all ambiguities[] and draw[ing] all inferences[] against the moving party,", as it must, the Court concludes that there are genuine issue of material fact as to whether there existed a special relationship, as defined in § 315, among the parties in this case.  *Beth Israel Med. Ctr.*, 448 F.3d at 579

---

[4] *See* Defs.' Reply in Support of Summ. J. Mot. 4-6, ECF No. 33 (citing *Smith*, 538 A.2d 157 (university did not have duty to prevent student from shooting two railroad engineers); *Sorge v. State*, 762 A.2d 816 (Vt. 2000) (state did not have duty to control minor in its custody who assaulted plaintiff); *Poplaski v. Lamphere*, 565 A.2d 1326 (Vt. 1989) (employer did not have duty to prevent intoxicated employee from driving away from workplace)).

In addition to their § 315 arguments, the Nobles also assert that they can prevail on the duty issue under a theory of negligent performance of an undertaking.  The negligent performance of an undertaking action, which has been recognized by the Vermont Supreme Court, *see Zukatis by Zukatis v. Perry*, 682 A.2d 964, 968 (Vt. 1996) (citing *Derosia v. Liberty Mut. Ins. Co.*, 583 A.2d 881, 883 (Vt. 1990)), is set forth in § 324A of the Restatement (Second) of Torts (1965):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The Nobles have raised factual allegations sufficient to sustain this sort of claim.  Specifically, they allege that Gaskin, in agreeing to serve as a moose hunting guide in exchange for monetary compensation, undertook to render services which, because they involved the "inherently dangerous activity of attempting to kill a large animal with high powered firearms," should have been recognized as necessary for the protection of others.  Opp'n to Summ. J. Mot. 5.  Furthermore, they allege that Gaskin, after being informed by Noble of the locations where he

17

would be hunting on October 22, "fail[ed] to exercise reasonable care [in a manner that] increase[d] the risk of [] harm" to Noble.  Restatement (Second) of Torts § 324A.

The Defendants next argue that Gaskin cannot be found to have owed a duty legal duty to the Plaintiffs because Boppel's conduct was not foreseeable.  They point out that Boppel pled guilty to aggravated assault as a result of the shooting at issue in this case.  "In general, crimes committed by a third party fall within the realm of the unforeseeable, and therefore cannot form the basis for liability." *Edson v. Barre Supervisory Union No. 61*, 2007 VT 62, ¶13, 933 A.2d 200.  This general rule notwithstanding, the Nobles have alleged specific facts suggesting that, although Boppel's conduct resulted in criminal liability, it was reasonably foreseeable to Gaskin.  In particular, the Nobles's allegations that Calvin Noble told Gaskin where he would be hunting on the day of the shooting and that Gaskin was responsible for directing Boppel and Kehler on where to hunt suggest that an accidental shooting of one of the hunters may have been foreseeable to Gaskin.

Finally, in a supplemental memorandum, the Defendants cite *Lussier v. Bessette*, a case recently decided by the Vermont Supreme Court, for the proposition that "[i]t is not the duty of those in a hunting party to supervise other members."  Supp. Mem. in Support of Summ. J. Mot., ECF No. 41 (quoting *Lussier v.*

18

*Bessette*, 2010 VT 104, ¶11, ___ A.3d ___).  In *Lussier*, several members of a hunting party walked through the woods in order to drive deer in the direction of another hunter, Collin Viens, who was waiting in a clearing with his rifle ready.  Viens's gun accidentally discharged killing Rejean Lussier, a farmer who was seated in a nearby tractor.  The administrator of Lussier's estate brought suit against the non-shooting members of the hunting party under a concerted action theory of liability. Finding that the defendants "breached no separate duty to Lussier and [that] their actions did not proximately cause his death," the Vermont Supreme Court affirmed the trial court's grant of summary judgment in favor of the defendants.  *Id*.

The Defendants argue that based on the rule announced in *Lussier* that "[i]t is not the duty of those in a hunting party to supervise other members," Gaskin cannot be held liable for Noble's shooting at the hands of Boppel.  *Id*.  The Defendants's argument here fails to take account of the fact that the Nobles, in alleging that Gaskin was not merely a member of a hunting party but was acting as a hunting guide at the time of the shooting, have raised a material factual issue as to whether there existed a "special relationship" in this case sufficient to overcome the general rule that there is "no duty to control the conduct of another to protect a third party from harm." Restatement (Second) of Torts § 315 (1965).

19

In sum, the Defendants have failed to show that there are no genuine issues of material fact with regard to the duty element of the Plaintiffs's negligence claims.  They have not raised any arguments that they are entitled to judgment as a matter of law on any of the other elements of that claim.  The Defendants's motion for summary judgment on the negligence claim is therefore **denied.**

B. *Joint Venture/Joint Enterprise Claims*

In their amended complaint, the Nobles allege that both Gaskin and Kehler may be held liable for the shooting because, together with Boppel, they formed a joint enterprise or joint venture.  To make out a joint venture claim a plaintiff must establish the following elements: "an agreement to share in profits and losses, joint control or right to control, a joint proprietary interest in the subject matter, and a community of interest in the performance of the common purpose." *Winey v. William E. Dailey, Inc.*, 636 A.2d 744, 751 (Vt. 1993).  To establish a joint enterprise claim, a plaintiff must show that "the parties [] have a community of interest in the object and purpose of the undertaking[] and an equal right to direct and govern the movements and conduct of each other in respect thereto." *Campbell v. Campbell*, 162 A. 379, 380 (Vt. 1932).[5]

_____

[5] The Vermont courts have not explicitly discussed the topic of what distinguishes a joint venture from a joint enterprise. The Minnesota Supreme Court has remarked that, "[a] distinction

20

The Nobles argue that Vermont's moose hunting regulations "create[] both a joint venture and enterprise by operation of law" among a permittee, subpermittee and guide because they "authorize[] a joint or team hunting regimen for moose." Opp'n to Summ. J. Mot. 6. While it is true that the regulations refer to a moose hunt undertaken by a permittee, subpermittee and guide as a "joint hunt" and direct that the subpermittee must be accompanied by the permittee at all times while hunting, Vt. Stat. Ann. tit. 10 app. § 33, the Court cannot conclude that this language by itself is sufficient to create a joint venture and joint enterprise by operation of law. Accordingly, in order to decide whether summary judgment is appropriate, the Court must examine the specific factual allegations the Plaintiffs have made regarding the relationship between Boppel, Kehler and Gaskin.

The Court finds that the Plaintiffs have raised genuine issues of material fact as to whether Kehler and Boppel were part of a joint venture and/or joint enterprise to hunt moose on the day of the shooting. The Plaintiffs allege that Kehler and Boppel traveled together from Pennsylvania to Vermont to hunt moose and that each contributed half of the $1,500 fee to stay at Gaskin's hunting camp and procure his services as a moose hunting

---

should be made between a joint enterprise[,] [which arises in non-business contexts,] and a joint venture, which arises in business transactions." *Delgado v. Lohmar*, 289 N.W.2d 479, 482 n.2 (Minn. 1979).

guide.  The allegations of joint travel and the sharing of expenses, taken together with the fact that Kehler designated Boppel as subpermittee under a regulatory regime which requires that the subpermittee always be accompanied by the permittee,[6] are sufficient to raise triable issues of fact with regard to whether Kehler and Boppel together formed a joint enterprise and/or joint venture.  Although the Defendants attempt to defeat the joint venture and joint enterprise claims by asserting that Boppel was hunting bear on his own on the day of the shooting, the Plaintiffs have alleged facts suggesting that Boppel and Kehler were in fact hunting moose together on that day and that Gaskin advised Kehler to fabricate the bear-hunting story.

The Nobles have not, however, raised genuine issues of material fact as to whether Gaskin, as the hunting guide, was a member of any joint venture or joint enterprise formed between Kehler and Boppel.  Rather, the facts alleged by the plaintiffs suggest that Gaskin, as a paid guide, had a different role and objective than that shared by Kehler and Boppel, as hunters.

The Nobles's motion for summary judgment is **granted** with regard to the joint venture and joint enterprise claims against Gaskin, but **denied** with regard to the joint venture and joint

---

[6] The regulations define "accompanied" as "being able to communicate without the aid of artificial devices except medically-prescribed eyeglasses or hearing aids."  Vt. Stat. Ann. tit. 10 app. § 33.

enterprise claims against Kehler.

### Conclusion

For the foregoing reasons, the Plaintiffs's motion to amend is **granted**; the Defendants's motion to strike is **denied**; the Plaintiffs's motion to file an opposition to the motion strike is **granted**; the Plaintiffs's motion to continue consideration of the summary judgment motion is **denied as moot**; and the Defendants's summary judgment motion is **granted** with respect to the joint enterprise and joint venture claims against Gaskin, but **denied** with respect to negligence claim against Gaskin and the joint enterprise and joint venture claims against Kehler.


Dated at Burlington, in the District of Vermont, this 3rd day of March, 2011.

/s/ William K. Sessions III
U.S. District Court Judge